Welcome to the United States Court of Appeals for the Fifth Circuit. We have one case to hear today in this special sitting. We trust that you're familiar with the the way our timing system works. My only reminder is that rebuttal time is reserved for rebuttal only. And with that we will call the case 18-31034 Cell Science Systems Corp. v. Louisiana Hlth Svc. and Indemnity Company. Mr. Smith. Good afternoon, Your Honors. J. Arthur Smith III for Cell Science. The District Court dismissed this case on the basis that it lacked sub-domestic jurisdiction. In the recent case of Lexmark International v. Static Control Commission, the Supreme Court clarified in very clear language what constitutional standing, what the elements are, and what the differences are between constitutional standing and what they call statutory standing. The Court had a reservation of its analysis, though, with derivative claims. Now, is this a derivative claim? Yes, Your Honor. You know the language I'm thinking about in the opinion where it said we don't reach standing if it's a derivative claim? I'm not familiar with that language. I think that it goes back to the statutory standing issue. I don't think that the Court ruled on anything except what was before it. But I think that the elements of the statutory standing claim were just clarified by that Court. I agree they didn't reach that issue. I mean, but they said they weren't reaching it. That's the point. Right. I understand that. But, you know, they made it clear that subject matter jurisdiction is consistent with three constitutional standing, three basic elements. Injury in fact has to be particularized and concrete. In this case, it was the self-sense was not paid. The second element is it's fairly traceable to the complaint of actions of the defendant. The defendant in this case allegedly did not pay. And then the third, likely to be addressed by a favorable judicial decision. Obviously, if there is such, Blue Cross would have to pay. Do you have any cases, Fifth Circuit cases that discuss Lexmark in an ERISA context? I'm not familiar with any, Your Honor. You know, we've looked at it. I'm not familiar. How do you square it with subsequent cases that are subsequent to Lexmark, like Lee and I believe Letourneau and Herman, cases that talk about the ERISA context? I don't agree with your argument. Well, I think Herman does. I think Herman, too, does as well. Letourneau does not. It's a conflict among the decisions of this Court. I go back in that respect, Your Honor, to the rule of orderliness. Herman 1 and Herman 2 were preceding cases, panel decisions. And I think Letourneau is at the center of that conflict. It has no effect. There's a language in the recent decision of Dialysis Newco that says that Herman 1 and Herman 2 were overruled by the en banc decision in MediQuip. But that's not correct. If you look at the MediQuip en banc decision, it says they're overruled to the extent that they are inconsistent with the panel decision in MediQuip. The panel decision in MediQuip dealt with the preemption of a state law claim and held that a claim for promissory estoppel is not preempted. So I think Herman 1 and Herman 2 are still good law. There's a conflict. I think we've got to go back. I respectfully submit we've got to go back to the rule of orderliness because it's just . . . if you read all these decisions that I'm sure Your Honors have, it's a bewildering mess. I'm not being disrespectful to the Court, but . . . But you acknowledge that Dialysis says that the issue of providers standing under 502 is a jurisdictional issue. I get that you disagree with that, but you acknowledge Dialysis says that. You know, in the context of that case, that was a case involving a provision that dealt with a direct payment authorization. The Court in Dialysis New Code drew a clear distinction between a direct payment authorization and an assignment and said the direct payment authorization doesn't assign the substantive right. It just assigns the right to seek payment and the right payment clause. And distinguished, I think it was Herman 1, which Herman 1 said it is a substantive right that is being conveyed. I think where the confusion lies in this case, and I think where the District Court was confused, is she treated it as a subject matter jurisdiction problem and it's not. It's a statutory standing issue. And Judge Dick, a very, very fine judge, but she required us to prove at the initial pleading stage the invalidity of assignments. And that just stands the Federal Rules of Civil Procedure on its head. I mean, there's no basis in that. We had had indiscovery. We moved for discovery. My client had asked for the pertinent documents pertaining to the claim. For four years, that's never been produced. We, you know, to make us try these merits issues at the initial pleading stage is just really, really wrong. Well, if it's jurisdictional, that's the way it works, isn't it? If it's jurisdictional, yes, Your Honor, I agree. But this is not jurisdictional in the sense of constitutional standing. And that's what Justice Scalia differentiated in the Lexmark decision, the difference between constitutional Article III standing and statutory standing. What do you deal — how do you deal with footnote 3 in Lexmark? Footnote 3. Can you tell me generally what it says, Your Honor? This is what Judge Davis was referring to earlier. Footnote 3 specifically says that the court in Lexmark is not dealing with third-party standing. It's going to save that question for another day. Well, I understand. Okay. And I'm not talking about that. I'm talking about the clarification that the court provided between constitutional standing and statutory standing. Okay. Now, the court also said in Lexmark that a — it cited the case of this court, Huggins Realty v. FNC, which I've cited in the briefs. And in that case, this court held that a motion to dismiss for lack of statutory standing is governed by Rule 12b-6. I get that Lexmark tries to clarify the law and sets up this dichotomy between what's actual Article III constitutional jurisdiction and essentially everything else is statutory. The question that we're trying to deal with here is where to put ERISA 502, which bucket to put in, right? Is it in the constitutional bucket or is it in the non-jurisdictional bucket? I just don't think it's — I mean, the Huggins case directly speaks to that. And they were cited with approval by the United States Supreme Court in the Lexmark decision. And it says that a motion to dismiss for lack of statutory standing is governed by Rule 12b-6. I simply ask the court to follow that. I would say with approval by the United States Supreme Court. Was that an assignment case under ERISA? I don't know if it's ERISA or not, Your Honor. I apologize for not knowing that. But it was — it was Huggins Realty v. FNC. I assume not, since it's a realty company. I mean, that's the whole question, whether it's — whether it is statutory standing or jurisdictional. Well, I think we have statutory standing as well. And if I can — if I can proceed on that, cell science alleges a cause of action in paragraphs 11 and 12 that the patient's assigned the contractual rights and benefits in and to the payment of the alkyl test to cell science systems. We contend there is statutory standing in two respects. Number one, from a textual standpoint, the statute provides that a beneficiary is someone who is designated by the participant who may be entitled to benefits. Counsel, let me — I hate to interrupt you again, because — No, no, that's fine. But I think this is the perfect place for me to ask you. You mentioned discovery and documents. It seemed to me, reading the district judge's opinion, that an attachment of the assignments, which you all would already have, your client would have, I assume, might have been what she was looking for in order to provide the assignment. She does mention that the case had been repled once or twice, a couple of amendments. And then she talks in a passage about the assignments have never been provided, they've never been attached. Wouldn't that have been one way to go ahead and satisfy the court in terms of its jurisdictional inquiry? That would have been severely prejudiced to my client without any discovery, without the documents surrounding those documents, without, you know, the reasons. Because Blue Cross is statutorily required and required by the Labor Department regulations to provide the documents that comprise the basis of their claims. And, you know, one of the main causes of action here is the waiver and estoppel. That clearly relates to course of dealings, things like that. We had to have discovery on that issue. I want to ask you about the waiver and estoppel also, but maybe I'm not understanding your answer. Doesn't your client have the assignments that it sues on? Or are you telling me that we didn't have them at the time in order to produce them to the district court? No, we had them. Okay. We had them. Apparently not all of them. I think there were four that were, you know, not provided or something to that effect. And not to jump too far ahead on your timeline of your argument here, but how long a period of time had Blue Cross and Blue Shield paid for these particular services? Twenty years. Twenty years prior? What about on this claim, though, these claims? These claims, they denied these claims, saying they were investigational after they had paid them for twenty years. And did they pay anything on these claims? Nothing on these claims as far as I know, you know. And you know, they never raised in the administrative proceeding the anti-assignment clauses. Never raised it. Although they were statutorily and by regulation required to raise the reasons for their denial. And then they come up for the first time in court and say, oh, we have anti-assignment clauses. And we're going to try this. The validity of these anti-assignment clauses in the initial pleading phase. Well, I'm sorry, Your Honor, I just could not buy into that procedure on behalf of my client. I thought it would be severely prejudiced. I made my case the best way I knew how based on the fact that I contended that we had constitutional standing, we had statutory standing. And I don't, you know, whether it's a Risa case or whatever, you still look for statutory standing. The main thing you look at is there a cause of action. And that's the main thing you look at. And clearly we have a cause of action here, which is governed by the face of the complaint under the federal rules. I want to also say we have derivative standing, and I've touched on that before. But basically, you know, we contend that in our pleadings, we clearly allege a cause of action both for beneficiary standing, derivative standing, and waive and estoppel. And outside of the court under 28J case last . . . this year, this court held that Blue Cross waived anti-assignment provisions in its policies because it made payments to and communicated with Encompass on some claims. Encompass Health Solutions versus Blue Cross. Same thing we have here, except our facts are much stronger. We allege that Blue Cross paid these claims for the LCAT testing dozens, if not hundreds, of times. They never disclosed the anti-assignment clauses or denied payment on that ground. We allege specifically in paragraph 30 of the supplemental amended complaint, and I quote, Blue Cross verified each insured patient's coverage for the treatment before the service was performed and expressly pre-authorized the service treatment for each insured payment. Let me ask you this, what could you have done differently in this case if Blue Cross had asserted the anti-assignment clause in the plan, you know, in part? I would think that they would have negotiated with Blue Cross to see if there could be a waiver of the anti-assignment clause, or not provide the services. I mean, they didn't have to provide the services. They provided the services on reliance, the fact that Blue Cross paid for . . . No, but after you provided the services, if they had raised that defense immediately, what could you have done differently? Well, after they had provided the services, well, you know, if we had had that in the administrative process, perhaps something could be addressed at that point. It's hard for me to speculate that, about that. I just know that we weren't . . . we provided this until we were ambushed in court. Well, I assume you . . . maybe you could have assigned them back to the patient if you had done that initially. Yes. Yeah, the patient could have sued. You know, that's . . . Under the assignment, do you have the exclusive right to sue? Yes, Your Honor. Well, I mean, it could be assigned back to the patient. There's one other thing I want to mention. I know I'm running out of time, but the reasonable and detrimental reliance, Herman 2 and Louisiana Civil Court Article 2653 are aligned. The article says, a right cannot be assigned when the contract from which the right arises prohibits the assignment of that right. Such a provision has no effect against an assignee who has no knowledge of its existence. And since this is a state law-based claim, the waiver and estoppel, the Court should consider, I respectfully submit, that provision because it's exactly what we have here. Thank you very much. I think I'm out of time. Thank you. You've saved five minutes for rebuttal. Mr. King? Good afternoon, Your Honors, and may it please the Court, Errol King with the Health Section of Phelps-Dunbar here on behalf of Louisiana Health Service and Indemnity Company doing business as Blue Cross Blue Shield of Louisiana. That's a lot. Let me ask you something right from the start. What's that? Do you have assignment, do you have anti-assignment clauses in all of your plans? Yes, Your Honor. Even in the . . . And how often do you assert that defense? We assert that defense once the assignment itself is raised to us. When a claim is paid at an initial matter, in this case, let's take this case, the forty-six claims at issue, they were denied because there was an exclusion in the policy that denies anything investigational. So that was what they were denied. That was the basis of the denial, not the anti-assignment provision. If self-science takes that denial and goes nowhere else with it, there's no need for us to raise anti-assignment. As a matter of fact, if no benefits are paid, if no benefits are owed under the policy, then there's nothing to assign by the member. The patient has nothing to assign in that particular instance because there's nothing payable. So if you have a policy defense, that's when you raise the anti-assignment clause? To me, it's like putting the cart before the horse. I'm not going to raise anti-assignment when the claim first comes through the door because the provider at that particular point in time is just trying to get paid. It's the idea that you want . . . I'm sorry. Exactly. So if you have a dispute about there being coverage under the policy, you then raise the anti-assignment clause? When the provider comes forward with the assignment in hand on behalf of the participant or beneficiary and says, now you have to deal with me. You're not going to be dealing with them because I have an assignment. The idea that you're waiting to see who sues? Yes. At that time, you don't know who's suing. Because if a participant sues in their own capacity, then we wouldn't be raising the anti-assignment. But my experience is that the provider ordinarily takes an assignment from the patient when he walks in the door, and the provider is the one who makes the claim. He doesn't wait to file a suit. That typically is absolutely correct. The providers are getting payment, and it's how the health care system works. It's obviously easier for the provider to go ahead and put forth that claim to the insurance company, and there's a whole process for that to work. And the insurance company, in this case, Blue Cross, looks at the patient's policy and makes a determination on the front end as to whether there is a basis under the policy for the claim to, A, be paid or to be denied. So you had a dispute from the GO Act that you didn't owe the claim, yet you didn't raise the anti-assignment clause. Again, there was no need to at that particular juncture when you're determining whether the claim is payable under the policy, there's no need to raise the anti-assignment at that juncture, because the provider, in this case, Health Science, has not presented an assignment. They're not trying to get paid via an assignment at that point in time. Well, you know there's an assignment, because the provider made the claim. They make, when they make the claim, let's be clear, they send the claim in electronically, and that is it. There is no assignment at that point in time. Well, you're not going to deal with a provider who doesn't have an assignment. Well, when they go to court, and that's when we get into the jurisdictional aspect of this case, when they go to court, yes, courts have held, this country have held, that if a medical provider who is not one of the enumerated parties under ERISA, this Court was talking about just a moment ago, which bucket do we put this in, this ERISA? Where do we put ERISA? Which bucket? That's because ERISA's unique. You've got three enumerated parties who can bring a claim, the plan participant, the beneficiary, or fiduciary. Cell science is not a plan participant, nor can they ever be. Cell science is not a beneficiary, nor can they ever be. Cell science is not a fiduciary, nor can they ever be. This Court in the Superior MRI Services case said, right to payment does not a beneficiary make, and that is true. All they have is a right to payment. They are not the plan participant. The law is clear, at least in this circuit, that an assignee can sue under ERISA for whatever the patient is owed. Yes, Judge, absolutely. So I don't understand why you think that when you get a claim in from a provider that you wouldn't make a determination then to deny it on the anti-assignment claim if you're ever going to do it. I mean, you make a—you pay these people for years, and so they make a claim like they've done for years. You don't pay it, and when they file suit, then you raise—it's kind of a gotcha. Let me kind of break that down if I can. First of all, there's been no evidence that they were paid for years. That was just something that cell science— Well, do you deny that? Do you deny it? I'm not denying they haven't been paid, Your Honor. We never looked at that aspect of the case. On these 46 claims, they were not paid, and you have to—what you have to do is each and every claim is dependent upon that plan. Because a claim may have been paid in the past under another plan, a different plan, it doesn't mean these claims are due to be paid under these plans. Well, it would be relevant on a Nestopil claim. Excuse me? It would be relevant in a Nestopil argument what you had done in the past with this provider. I don't think it would be, Your Honor, with all respect. Under the mellow analysis of Nestopil that the Fifth Circuit uses, which governs this case, I think you have to show a material misrepresentation, which Judge Dick said in footnote 53 of her opinion, they did not show. They did not prove that. You have to show a material misrepresentation. There's been no allegation of that by Booker Rothschild. You have to show that there was an extraordinary circumstance, and of course that they had to rely upon the misrepresentation to their detriment, but an extraordinary circumstance, which has been defined as, which has been said by the court as something like fraud or misleading them, and we don't have any of that here. Judge Dick, despite cell science using the wrong test for Nestopil in the district court, Judge Dick nonetheless analyzed their case under the mellow standard, and she found, and again, footnote 53, there's just no evidence of Nestopil here. So I think she got that right as well. Going back to jurisdiction and what bucket to put this in, again, I think the Supreme Court said, we'll leave third-party standing for another day, because I think they recognize that when you're looking at the principles of prudential standing, you've got generalized grievances, you've got third-party rights, and you've got zone of interest. Generalized grievances, they've already said, is unconstitutional. Zone of interest, Lexmark went ahead and said, this is statutory standing, this is statutory interpretation. Here, we don't have statutory interpretation. Wouldn't it make sense to treat it as statutory? I mean, setting aside what precedents our circuit may or may not have, it seems to me that cell science can establish the Lujan factors. All that's left is, do they have an action under the statute? Another way, let me answer that by it this way, 12b1, let's assume 12b1 works, okay, and we lose. Then, to answer your question, yes, we do go to 12b6, absolutely. Then we're going to determine whether they have a cause of action under the statute within the confines of NERISA. Have they filed a benefits case, for instance, pursuant to their assignment, because they can do that. They can make a claim for benefits. They can't make a claim for penalties for a planned document against a company like Blue Cross. They have to do that against the plan administrator. We do get into the merits under 12b6, but Judge Dick got it wrong as an initial matter by going to 12b1. Under the Fifth Circuit precedent that guides us in this case, the Superior MRI Services case, that case, post Lexmark, said third-party standing is prudential standing for this court, and that's what we're going to follow. That's precedent. The Supreme Court did not go there in footnote 3, as the panel has pointed out, of the Lexmark decision. Well, you know, did you look at the cases the Supreme Court cited in that footnote? Yes, I did, Your Honor. Well, one of them, it seemed to me that the cases they were relying on was where the plaintiff was making a claim for some third party, was not an asking need. They considered, apparently, based on those cases, that they were dealing with claims where the plaintiff was trying to make a claim for some third party, and the court said, in these third-party claims like that, you don't have enough interest in order to make a claim. This is not an assignment case, and, in fact, in another case, Sprint V.A.P.C.C., the payphone operators assigned their legal claims against, for long-distance carriers, to the plaintiff, and so the plaintiffs were asking needs, and the court said that the plaintiff was making a claim based on their own injuries, because they had paid money out for the assignment, and so the third-party claims weren't relevant, so they allowed that claim, because the asking need is asserting his own claim. I think when you have a claim as an asking need, I think it more firmly establishes that claim that you have, as opposed to those other cases you were talking about, Your Honor, where ... Well, they've got their own claim now if they have the contract and they've done the services. They have their own claim in the shoes of the planned participant. They're standing at that point in time in the shoes of the planned participant. It's about standing, because remember, I start off by saying, Orissa, you're trying to turn the wood bucket to put it in. Orissa only allows claims by planned participants, beneficiaries, or fiduciaries, so they have the standing of the planned participant by virtue of that assignment. Well, all I'm saying is, based on those cases that I read, the Supreme Court was not talking about an asking need in that footnote. They were talking about a plaintiff who's trying to assert a claim on behalf of somebody else, and they've got to show that relationship, and if it's not close enough, they don't have a claim. It's not an asking need. It's not an asking need, but the analysis is still the same.  You're asserting the rights of a third party. You need to read that Cox case, the one I just cited to you. It's APCC 554 U.S. 269. Whether you're an asking need or whether you have something else from this other third party, you're still asserting rights of a third party. Well, read that case. That's not what it says. I think I will. Going back to Judge Dick's decision in the lower court, I think she was correct to consider this as a 12B1. We made a factual attack of the plaintiff's complaint. Judge Dick, as the court recognized in the oral argument earlier, she gave the plaintiff a chance to amend his complaint, which he did once. Then she allowed supplemental briefing on our motion to dismiss. Matter of fact, we filed the motion to dismiss in January. She did not decide until August. And if you look at page eight of her decision, she says, she points out in that decision that plaintiff had four months in order to come forward with some evidence. The burden of proof has shifted to self-science once we made a factual attack on the complaint, yet they came forward with nothing. To me, the plaintiff's self-science labored under the misconception that their allegations in the complaint should be accepted as true, such as in a 12B6 situation. And that simply was not the case. Once we made a factual attack, the burden fell to self-science, which Judge Dick said in footnote 38, footnote 53, and page eight, they failed to come forward with any evidence to satisfy their burden of proof in the 12B1. So we think she got that correct. I've already talked about estoppel and why that argument doesn't work under the mellow principles of estoppel that guide ERISA cases in the Fifth Circuit. So I will leave, wind up my argument with this. Let me ask you before you wind up. I take it your main point is this is jurisdictional under our circuit's post-Lexmark decisions. Yes, Your Honor. That's your main point. And I take that point. If we were to rule on a clean slate, so forget our precedents, and we're just talking about Lexmark, I just want to ask you this hypothetical. I take it your only dispute is the assignment issue, right? In other words, you don't, assuming there is a valid assignment here, if there were a valid assignment, you've satisfied the Lujan factors. Do you agree with that? Assuming there's a valid assignment, we satisfied mellow? They're standing, Lujan, the Article III, the injuring fact and causation and redressability. There's, in other words, there's constitutional standing here, right? Yes. So the only dispute that you have in terms of the jurisdictional issue is purely the question of the assignment? Correct. Correct. Why wouldn't that naturally under Lexmark fit as a statutory analysis rather than as a jurisdictional analysis? Because there's no need to go do statutory interpretation. You don't have to go to 502 and analyze it to determine that self-science, which is a corporation. Well, you do in the sense that 502 requires an assignment, right? You sort of laid out that it's not a beneficiary. You had that whole windup. That was all interpretation. And your point was, I think, that's why they have to prove the valid assignment. Why is that not all statutory? I would disagree and I would say that it is not interpretation. There is no interpretation that needs to be made. We know self-science is not a plan participant. They are not the listed insured on the policy of insurance coverage. That's the plan participant. They're not a beneficiary. Agree with all that. I understand what you're saying. My point is that none of what you're saying has anything to do with the three Article III factors. This is much more on the side of, is there a cause of action? Not what I'm saying. Cause of action comes... What if Congress had added the word provider? If Congress had added the word provider, then... It would be different. Right. So does that make it a statutory question rather than a jurisdictional question? But that's not the situation we have under ERISA. The Congress was very, very clear as to who has rights under ERISA. And so the only way that a company like self-science can be before this court is if they stand in the shoes of someone else, if they have standing. And clearly they do not because of these anti-assignment provisions, which are valid and which are legal under Louisiana and federal law. Because of these anti-assignment provisions, they do not have that standing to come before this court. But if they came in as an assignee, and you don't dispute that they're an assignee, do you? I do not. So the clear law gives them a cause of action against, if they have a valid assignment, they have a cause of action against the insurance company, right? Yes. So under that premise, then all three of the constitutional standards would be required, would be met, would it not, for constitutional standing? If they have a valid assignment. Okay. So that's the whole question. Correct. And because of the anti-assignment provisions in each of the policies that we were proved up to Judge Dick in the lower court with the declaration of Ginger Bradley, Blue Cross Blue Shield, those assignments were not valid. Okay. But Judge Dick's decided this on jurisdiction. So whatever she said about having a cause of action or the validity of the assignment has no effect if she just decided on jurisdiction. She couldn't go to the merits then. She decided that under 12b-1, self-science, the plaintiff had no standing to assert the claims of the plaintiff participant because his assignments were invalid. They're not valid assignments. So she never got to 12b-6. She never got to the merits of whether they had a cause of action. Yeah, but she purported to get to the estoppel issue. She did deal with the estoppel issue simply because the plaintiff argued to her that Blue Cross Blue Shield should be stopped from raising the anti-assignment provision at this stage of the proceedings. All right. But she couldn't really get to that since she's decided on jurisdiction. But she did get to the estoppel in her decision. She did get to the estoppel argument and did a very thorough analysis of what had actually taken place in the case as opposed to what the plaintiff had argued in the lower court. So is your point, is that because the validity of the assignment does in fact implicate the three factors, the three jurisdictional factors? The validity of the assignment is everything. If the assignment, and we see this a lot of times, if the assignment is a valid assignment, yes, then self-science stands in the shoes of the plaintiff. But I understand that. So if the assignment is invalid, then which of the Lujan factors fails? Is it causation? Is it, maybe it's all of them, but... It's jurisdiction fails. They don't have... Right, but for which reason? Because of no injury in fact, no causation, no addressability, or... I think I'm starting to see your point that assignment essentially implicates one or more of those factors. My response, Your Honor, would be that perhaps it implicates all three. If you don't have the standing and the jurisdiction to assert the claim, then none of that is there. You're not going to have any of that. If the provider... It may be redressability that... Yes. ...you don't have the power to cure their concern. Their concern is perhaps with the patient. Yeah. Let me ask you this. I looked and maybe you found some, but I didn't find any other circuit that addresses the issue of whether the assignment is valid under 12b-1. They all address it under 12b-6. I am not aware of a court... I think that question was asked of a plaintiff too. I'm not aware of a court that has addressed it under 12b-1, as you're saying. Maybe that's why we're staying... Maybe that's why we have a special setting here, okay? We're trying to determine where it's going to fall. What I'm asking you is, did you find a case... I did not. ...on the circuit that addressed the defense of anti-assignment clause in the plan under 12b-1? I did not. And there's nothing I can cite you to here except for Superior MRI Services, which admittedly was not an ERISA case, but which this court considered, Lex Mark, that case dealt with an assignment, and this court, the Fifth Circuit, said you don't have standings, 12b-1. You've got dialysis in those other cases as well. What's that? You've got dialysis in our other cases as well, right? But the question was, do I know of any case that dealt with an assignment under 12b-1 post-Lex Mark, and I am not aware of it, except for the Superior case. In that case, it wasn't an ERISA case, and it was an assignment to a non-existent corporation, and they said no jurisdiction, but if the non-existent corporation got an assignment, it didn't have anything. You couldn't have gotten redressability there. But they still were talking about assignment, and they still were talking about asserting the rights of a third party. Right. You had an assignment to a non-existent party. I admit, yes, the facts are different than what we have here, a provider suing under assignment to receive a patient. Understood. But we still have assignments. We still have prudential principle of asserting the rights of a third party, and the Supreme Court has left that intact for another day. I think dialysis did deal with an assignment, didn't it? Am I misunderstanding the dialysis precedent? I believe it did, yes. Oh, you're saying it doesn't have Lexmark? Yes. Okay, got it, got it. Because it is, dialysis NUCO is an ERISA assignment case. I meant post-Lexmark. It doesn't expressly analyze Lexmark. Okay, thank you. Any further questions? Thank you. Let's give counsel another minute since we took more time on the other side. Your Honor, dialysis deals with a direct payment authorization, not an assignment. And Judge Yelrod makes a clear distinction between the two in the dialysis decision. Where? I wanted to point out— Where in the opinion? Where in the— I couldn't tell you the page number. I don't have it, but it's in the decision. I want to point out the First Circuit decision, City of Hope National Medical Center versus Health Plus, Inc. The First Circuit held that an assignee can be a beneficiary or is a beneficiary under the statute, which seems to be a straightforward reading of the text. Counsel says that this is how the health systems operate. Well, Judge Davis cited the Sprint case. In the Sprint case, they dealt with the history of assignments, going back to the 17th century or the 18th century, and said these are fundamental instruments of commerce, that businesses rely on these things frequently, and we're going to uphold the assignments, even though there was a serious question as to, under the circumstances of that case, whether the assigner really was assigning anything. But that's exactly what we have here. Assignments are just critical to the private health industry. I mean, patients go in every day and sign assignments. I go to my doctor for treatment. I sign an assignment. And, you know, it's just really important to support these private health care, the ability to get paid. I mean, that's all we're talking about, the ability to get paid for your services. That sounds like you're making a plea for courts to ignore anti-assignment clauses. I'm not saying ignore them. I'm saying you should go back to Herman 1 and Herman 2, which under the Rule of Ordinance are controlling precedents. And they dealt with anti-assignment clauses, and they held that they're not going to apply to situations where you're dealing with the health benefit that is the purpose of the policy and the purpose of ERISA to further. And they have a very limited view of the anti-assignment clauses, and those are controlling precedent in this court, notwithstanding other conflicting jurisprudence. And, you know, there is misrepresentations here. They misled, we can prove with the benefit of discovery, they misled sales signs. Paying for their benefits or their services for 20 years, and then all of a sudden saying, oh, no, and saying a bogus thing about investigational. You know, we can show that they mislead, but we need discovery to do that. And we didn't even get the documents that pertain to the claim, although they have a statutory, regulatory obligation to produce those. Now, to talk about Waver and Estoppel a little bit more, they kind of harp on this Mello case. That was a Mississippi case based on Estoppel, and I said to the district court, well, why do you want to apply a Mississippi case to a state law-based cause of action? Why don't you apply Louisiana law? And she said, well, no, no, we're not going to. You know, she had her reasons for it. But I think if you're going to apply a state-based cause of action, you have to apply the law of the forum state. If you're going to borrow that law, you borrow the law of the forum state. But in any event, there is a material misrepresentation. Discovery, we could easily go with the course of dealing with this, granting these benefits for 20 years and not giving any indication of any anti-assignment clauses. And I think we can certainly show Estoppel. We were permitted to amend the complaint one time after the Blue Cross finally disclosed they had an anti-assignment clause. We alleged in more particularity the waiver in Estoppel claim, but that doesn't substitute for discovery, production of the documents that were issued in the administrative process. And these assignments are just vital for private health care providers. And there's no real reason. I mean, the whole idea of ERISA is to facilitate the provision of these kind of services. And I've cited in my briefs. What is it in Herman that you're relying on? Because I'm looking at Herman and it says quite clearly this is a jurisdictional question. I'm sorry, Your Honor, I didn't hear you. What is it in Herman that you're relying on? Because I'm looking at Herman, page 1288, and it says that this is a jurisdictional issue. Well, what I'm relying on principally in Herman is the fact that the Herman courts did not apply the anti-assignment clauses on the circumstances of a patient seeking payment for health care benefits that were otherwise provided for by the policy. And I'm not talking about that's not on that is not on the jurisdictional issue. I think the jurisdictional issues stands on other grounds. But I just respectfully submit that if these assignments you stand in the shoes, you receive no more, no less than what the assigner had. And I believe that that is a very important tool of the medical industry. And I ask the court to reverse and remand. Thank you very much. Thank you. The case is submitted and the court is adjourned.